# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **KENNETH TYRONE CHATMAN,** | ) | CASE NO. 7:16-cv-00540 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | By: Norman K. Moon |
| Respondent. | ) | Senior United States District Judge |

Kenneth Tyrone Chatman, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Circuit Court of the City of Lynchburg. Respondent filed a motion to dismiss Chatman's § 2254 petition, and Chatman responded, making the matter ripe for disposition. After review of the record, I will grant the motion to dismiss, and deny a certificate of appealability.

## I. Factual & Procedural Background[1]

On the night of October 6, 2008, Leta Campbell was driving around Lynchburg with Quinton Austin, Khiry Withers, and William Mitchell. Around 10 P.M., Quinton Austin, cousin to both Petitioner Chatman and Chatman's brother Chris Austin, asked Campbell to stop by his grandmother's house on 209 Charlotte Street. Campbell parked about two houses down the block. Mitchell and Campbell stayed in the car while Quinton Austin and Withers got out and entered the residence.

Later, Chatman and Chris Austin arrived and entered 209 Charlotte Street. Chris Austin had an ongoing disagreement with Quinton Austin and Withers. A verbal dispute broke out,

---

[1] Chatman pleaded guilty; therefore, I have utilized the Commonwealth's proffer of evidence at the guilty plea hearing for the factual and procedural background. *See* Guilty Plea Hr'g Tr. 6-11 (Feb. 26, 2009).

which continued out into the yard. As Quinton Austin and Withers headed toward Campbell's car, gun shots rang out.

Chatman and his brother, Chris Austin, were standing in the yard, with at least one of them firing down the street at Quinton Austin and Withers. As Quinton Austin and Withers fled, both were shot in the buttocks area. Multiple bullets struck Campbell's vehicle; one of the bullets shattered the rear window, passed through the vehicle, and exited the front windshield. Campbell was in the driver's seat and Mitchell was in the back seat when a bullet passed within a foot of Campbell's head. During the shooting, Chatman fired a fatal shot into the back of Chris Austin's head.

A police investigation indicated that all of the shots fired that night came from inside the fenced-in area on 209 Charlotte Street. Police found nine shell casings on the front step area of the residence. Investigator Colin Byrne determined that five casings had been fired from a nine millimeter semi-automatic firearm and four casings had been fired from a .380 semi-automatic firearm.

Police Major Wayne Duff was nearby and stopped Campbell's vehicle, which had the windows shot out. Officers searched the car and its occupants: Campbell, Mitchell, Quinton Austin, and Withers, but no weapons were found. Once the police had time to interview everyone in the vehicle and examine the physical evidence, police determined that Christopher Austin and/or Chatman had been shooting down the street at Withers and Quinton Austin, and that Chatman had accidentally shot Chris Austin in the back of the head, killing him.

On October 7, Chatman voluntarily went to the police station to speak to investigators J.T. Loyd and R.W. Moore.[2]  That interview was taped and transcribed.  At first, Chatman claimed that Chris Austin had done all of the shooting.  Chatman stated that Chris Austin began firing a .380 semi-automatic handgun, and that when the .380 jammed, Chatman tried to help his brother by clearing the weapon while Chris Austin resumed shooting with a nine millimeter handgun.  However, as the interview continued, Chatman acknowledged that he and his brother both had guns and that they were both shooting when Chris Austin was hit in the cross fire.

Dr. Amy Tharp of the Medical Examiner's Office conducted the autopsy on Chris Austin.  In that report, Dr. Tharp indicated that Chris Austin died from a gunshot wound to the back of the head.  She further indicated that the bullet traveled from a left to right direction and at a slightly downward angle.  Tharp's findings are consistent with Chatman killing Chris Austin while both of the brothers fired weapons.

Chatman pled guilty to felony-homicide, malicious wounding, maliciously shooting into an occupied vehicle, two counts of use of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  He was sentenced to forty-seven years of imprisonment, with seventeen suspended.

Notably, Chatman did not appeal his convictions, but in 2010, he filed a habeas petition in state circuit court.  The court dismissed his petition, and Chatman did not appeal the dismissal to the Virginia Supreme Court.  Chatman also filed a § 2254 petition in 2012, which Judge Wilson dismissed without prejudice for failing to exhaust state remedies.

---

[2]  Some documents state that the police interview occurred on October 9, but Investigator Loyd confirmed that the interview occurred the day after the shooting, on October 7, 2008. Proceeding Tr. 106-07 (Dec. 10, 2008).

## II. Current Claims

On November 15, 2016, Chatman filed the present petition, alleging three claims. First, he alleges he is actually innocent of the crimes to which he pled guilty. He relies upon what he calls "new evidence" in the form of a sworn affidavit from an actual victim, Withers, stating that Chatman did not shoot him, nor did he shoot a firearm. Chatman claims that this "new evidence" was not available at trial, and that such evidence supports his factual innocence to the extent that no reasonable juror would have found him guilty beyond a reasonable doubt. Next, he claims that Counsel was ineffective for coercing him into pleading guilty to crimes of which he was actually innocent, and where there was no evidence available to the Commonwealth to establish his guilt. Finally, he alleges that Counsel was ineffective for failing to challenge a fatal defect in the indictment for the charge of use of a firearm during the commission of a murder where the indictment failed to give petitioner notice of the charge against him, and counsel coerced him into pleading guilty on that charge.

## III. Discussion

*A. Statute of Limitations*

Chatman's petition is time-barred. Under § 2244(d)(1), a petitioner must file his federal habeas petition within one year from the latest of when: (1) his conviction became final at the conclusion of direct review or the expiration of the time for seeking such review, (2) any illegal state created impediment to filing was removed, (3) the United States Supreme Court recognized a new, retroactively applied constitutional right, or (4) the factual predicate of the claim could have been discovered through due diligence. 28 U.S.C. § 2244(d)(1).

A petitioner can "toll" the federal habeas statute of limitation in two ways: statutory tolling and equitable tolling. Statutory tolling occurs when a petitioner files a state habeas

petition within the federal statute of limitation period. The federal limitation period is then tolled for the duration of the state habeas proceeding and any subsequent appeal. 28 U.S.C. § 2244(d)(2). Equitable tolling occurs only if a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544, U.S. 408, 418 (2005)).

Chatman's petition has offered no evidence to warrant tolling of any kind. The circuit court convicted Chatman on April 24, 2009. The conviction became final on May, 25, 2009, when he failed to appeal within thirty days. By the time he filed a habeas petition in the circuit court on April 29, 2010, 340 days of the federal limitations period had already run. On August 2, 2010, the circuit court denied his petition and Chatman failed to appeal to the Virginia Supreme Court. Therefore, the federal habeas statute of limitations began to run again and expired later in 2010.[3] Chatman did not file the present petition until November 2016, more than six years later.

Nevertheless, Chatman claims that his petition is timely because Withers's November 9th, 2015 affidavit[4] is "new evidence" that resets the habeas statute of limitations under § 2244(d)(1)(D).[5] Withers's affidavit, however, is not "new evidence." At the December 10, 2008 proceeding, defense counsel asked Withers: "You never saw Kenneth Chatman with any

---

[3] Chatman's 2012 § 2254 petition was already untimely, and does not affect the current petition.

[4] In the affidavit, Withers "ask[s] that the charge of malicious wounding be vacated on the defe[n]dant Kenneth Chatman Jr., Reasons being, because I, Khiry Withers didn't see the defendant with a gun nor did I see the said defendant shooting on the night of the incident." Withers Aff. 1, ECF No. 1, Attach. 1.

[5] Section 2244(d)(1)(D) states: "A 1-year period of limitation . . . shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

kind of weapon, did you?" Proceeding Tr. 46 (Dec. 10, 2008). Withers responded: "No, I didn't." *Id.* Defense counsel continued: "And you don't know who shot you?" *Id.* at 48. Withers replied: "No. That's why I want the charges dropped from . . . Mr. Chatman. I know he, he ain't shoot me for a fact, so I would like the charges dropped from him, if y'all don't mind." *Id.* Wither's affidavit is no more than a repeat of his testimony—not new evidence. Chatman had knowledge of the information contained in Withers's affidavit in 2008, seven years before his alleged "discovery." Therefore, since Chatman fails to present any new evidence that would reset the statute of limitations under § 2244, I conclude that Chatman's petition is time-barred.

B. *Consequences of a Guilty Plea*

The United States Court of Appeals for Fourth Circuit has instructed district courts to generally dismiss habeas petitions that contradict the plea colloquy. *See States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

At the threshold, Chatman fails to demonstrate "extraordinary circumstances" that would invalidate his guilty plea. *Id.* at 221. At his plea hearing, Chatman told the circuit court that he: pleaded guilty, understood the plea, was satisfied with the services of his attorney, and was pleading guilty because he was, in fact, guilty. Guilty Plea Hr'g Tr. 4-5 (Feb. 26, 2009). He also failed to object to the Commonwealth's proffer of evidence, which included a statement that Chatman had told police that he had both assisted his brother in shooting the victims and personally shot at them himself.

6

Chatman fails to establish "extraordinary circumstances" that would justify invalidating his sworn representations at the plea colloquy, and he does not factually or legally substantiate his claims of coercion and lack of notice.[6] Therefore, I conclude that Chatman's petition is barred. *See Lemaster*, 403 F.3d at 216.

C. *Exhaustion and Procedural Default*

Additionally, Chatman's petition is procedurally defaulted because he failed to properly exhaust his claims. "[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)).

Chatman never presented his claims to the Virginia Supreme Court, and it is now too late to do so under Va. Code § 8.01-654(A)(2). Therefore, his claims are simultaneously exhausted and defaulted under *Baker*.

---

[6] "Bare allegations" of constitutional error are not sufficient grounds for habeas relief; the petitioner must proffer evidence to support his claims. *Nickerson v. Lee*, 971 F.2d 1125, 1135 (4th Cir. 1992).

7

D. *Excuse for Default*

Chatman has not provided any evidence that his procedural default should be excused. "If a claim is defaulted, then petitioner must fail on that claim unless he can show that cause and prejudice or a fundamental miscarriage of justice might excuse his default." *Bell v. True*, 413 F. Supp. 2d 657, 676 (W.D. Va. 2006) (citing *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998)). Plaintiff fails to provide any evidence for either test delineated in *Bell*, cause and prejudice or fundamental miscarriage of justice, thus the procedural bars to his claim remain.

In order to show the cause and prejudice required to excuse a procedural default, the "cause" prong requires a petitioner to demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must show that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999) (citing *McClesky v. Zant*, 499 U.S. 467, 494 (1991)). "[T]he 'cause and prejudice' test is framed in the conjunctive, the absence of cause makes unnecessary an inquiry into prejudice." *Davis v. Allsbrooks*, 778 F.2d 168, 176 (4th Cir. 1985). Chatman cannot demonstrate cause because (1) he has not alleged that an objective factor, external to his defense, impeded him from raising his claims at an earlier stage, and (2) the facts underlying Chatman's claims existed and were discoverable in December 2008, two months before he pleaded guilty. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006). Therefore, Chatman has failed to establish the "cause" required to avoid a procedural default under the "cause and prejudice" test. Moreover, since Chatman fails to establish "cause," it is unnecessary to inquire into the prejudice prong. *See Davis*, 778 F.2d at 176.

Alternatively under *Bell*, a fundamental miscarriage of justice can also excuse procedural default, and the § 2244 time-bar, in a case of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995); *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). A petitioner is permitted to claim actual innocence by providing new evidence that "must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice *unless* his conviction was the product of a fair trial."[7] *Schlup*, 513 U.S. at 316 (emphasis in original). Chatman submits Withers's 2015 affidavit as "compelling new evidence" of his actual innocence, but the affidavit is neither "new" nor compelling. First, the affidavit mirrors testimony that Withers made at Chatman's 2008 hearing. Second, Withers's affidavit does not exculpate Chatman. Instead, Withers merely confirms that, while fleeing gunfire on the night of October 6, 2008, Withers did not see Chatman holding or shooting a gun. Withers never purports to have personal knowledge that (1) Chatman never shot a firearm during the altercation, or that (2) Chatman did not aid Chris Austin in shooting the victims. Therefore, Chatman has not proved by a preponderance of the evidence that no reasonable juror would have found him guilty beyond a reasonable doubt. His additional claims alleging and pertaining to actual innocence are likewise without merit.

---

[7] The Court must examine all evidence and make a holistic threshold determination about the petitioner's claim of innocence separate from its inquiry into the fairness of his trial. *See Teleguz v. Pearson*, 689 F.3d 322, 330 (4th Cir. 2012). The Court may consider: the nature of evidence, *House*, 547 U.S. at 537, the timing of submissions, *McQuiggin*, 133 S. Ct. at 1928, the credibility of witnesses, *House*, 547 U.S. at 537, 552, and the probative force of the newly supplemented record. *House*, 547 U.S. at 538; *Sharpe v. Bell*, 593 F.3d 372, 381 (4th Cir. 2010). After performing this analysis, the district court must determine whether "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 328. While a district court may have greater difficulty determining the credibility of evidence on a "cold record," the Fourth Circuit has allowed district courts to conclude that the evidence is inadequate or unreliable enough to dismiss the petition without an evidentiary hearing. *See Pearson*, 689 F.3d at 331.

Therefore, after review of the supplemented record, I conclude that Withers's affidavit and claims of legal insufficiency cannot satisfy *Schlup*'s rigorous burden of compelling new evidence. Therefore, I conclude that Chatman has failed to establish a colorable claim of actual innocence that would entitle his time-barred and defaulted claims to receive federal habeas review.

## IV. Conclusion

For the reasons stated, I will grant the motion to dismiss. Chatman's petition is unreviewable under *Lemaster*, time-barred, procedurally defaulted, and ultimately without merit. An appropriate order will follow.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Chatman and to counsel of record for Respondent. Furthermore, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability will be denied.

**ENTER:** This  19th   day of September, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE